Keith A. Custis (#218818)
    kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller *(pro hac vice forthcoming)*
    ack@kellerlenkner.com
Travis Lenkner *(pro hac vice forthcoming)*
    tdl@kellerlenkner.com
Marquel Reddish *(pro hac vice forthcoming)*
    mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
    wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

RAYMOND MCKAY,

     *Plaintiff,*

vs.

DOORDASH, INC.

     *Defendant.*

Case No. 3:19-cv-04289

**COMPLAINT**

1. Failure to Pay Minimum Wage Under the FLSA
2. Failure to Pay Minimum Wage Under the California Labor Code
3. Failure to Provide Wage Statements Under the California Labor Code
4. Violation of Unfair Competition Law

**(Jury Trial Demanded)**

# INTRODUCTION

1. Plaintiff Raymond Mckay ("Mr. Mckay") works as a courier for DoorDash.

2. Together with other DoorDash couriers, Mr. Mckay forms the core workforce necessary for DoorDash to make deliveries—the service that generates DoorDash's revenue. Rather than treat Mr. Mckay as an employee, DoorDash misclassifies him as an independent contractor, which means it fails to pay him a minimum wage; fails to pay him overtime; and fails to provide him with various other protections required by federal and state law.

3. Mr. Mckay files this Complaint against DoorDash to collect what it owes him under federal and state law.

# PARTIES

4. Plaintiff Raymond Mckay is an adult resident of Modesto, California. He currently works as a courier for DoorDash.

5. Defendant DoorDash, Inc. is a Delaware corporation headquartered at 901 Market Street, Sixth Floor, San Francisco, California 94103.

# JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq*. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims arising under state law because the claims are so related to the FLSA claim that they form part of the same case or controversy.

7. The Court has personal jurisdiction over DoorDash because DoorDash has its headquarters and principal place of business in California.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

# INSTRADISTRICT ASSIGNMENT

9. This action is properly assigned to the San Francisco Division of this District, pursuant to Civil Local Rule 3-2(c) and (d), because a substantial part of the events or omissions

that give rise to the claim occurred in San Francisco County, which is served by the San Francisco Division.

### FACTUAL ALLEGATIONS

**A.    COURIERS ARE INTEGRAL TO DOORDASH'S BUSINESS.**

10.    Tony Xu and Evan Moore founded DoorDash in 2013.

11.    As described by its founders, the purpose of DoorDash was to "build the world's first and largest software-enabled logistics company."[1]

12.    Effectively all of DoorDash's revenue comes from making deliveries to customers. The most significant part of that revenue comes from delivering food.

13.    DoorDash partners with various merchants such as restaurants and retailers.

14.    Customers order food and other items from DoorDash partner merchants by using DoorDash's website or smartphone app.

15.    When a customer places an order, DoorDash assigns a nearby courier to pick up the order from the merchant and deliver it to the customer.

16.    Consumers uniformly associate DoorDash's brand with its on-demand delivery service.

17.    Wikipedia—a crowd-sourced, online encyclopedia designed to capture the consensus view of its users—states that "DoorDash Inc. is an on-demand food delivery service."

18.    DoorDash's marketing tagline is "delightfully delivered."

**B.    DOORDASH TIGHTLY CONTROLS ITS COURIERS' CONDUCT.**

19.    DoorDash couriers receive delivery requests through the courier version of the DoorDash app.

---

[1] Erika Ekiel, "DoorDash CEO: Solving Problems of Time-Starved People," Stanford Business (Nov. 30, 2015), *https://www.gsb.stanford.edu/insights/doordash-ceo-solving-problems-time-starved-people*.

20. Like many employers, DoorDash schedules its workers for shifts. DoorDash asks its couriers to schedule time slots in advance in order to ensure there are enough couriers on the road during busy times.

21. To check in to a scheduled time slot, a courier goes "online" by opening the DoorDash app on his or her smartphone.

22. DoorDash then sends a new delivery request to the courier. Couriers have no control over when, whether, or how many deliveries DoorDash will route to them. And the app does not allow couriers to specify that they wish to receive deliveries for any particular customer or merchant.

23. DoorDash gives couriers only a limited amount of time to decide whether to accept a delivery request. If a courier declines the request or takes too long to decide, then DoorDash withdraws the request and sends it to another courier.

24. DoorDash monitors each courier using performance metrics such as how frequently the courier shows up to his or her shift, customer ratings of the courier, the rate at which the courier's deliveries are accepted, and the rate at which the courier's deliveries are completed. If a courier's rating falls below DoorDash's minimum standards, DoorDash may terminate or suspend the courier.

25. DoorDash sets the delivery fee that it charges its customers; couriers cannot adjust the fee.

26. DoorDash sets the rate of pay in a given area; couriers cannot adjust that amount either.

27. If a customer wants to cancel an order, couriers are not allowed to handle those types of requests and must "redirect the customer to reach out to DoorDash Support team." DoorDash then has the sole discretion to determine if it will charge a customer a cancellation fee and how much it will charge.

28. DoorDash may terminate or suspend a courier based on customer feedback; couriers have no input in that process.

29. Because DoorDash classifies its couriers as independent contractors rather than employees, it makes no effort to ensure that it pays the minimum wage required in the relevant jurisdiction or any required overtime.

30. DoorDash also does not reimburse couriers for any fees they incur while on a delivery, including parking tickets and fees or moving violation tickets.

31. DoorDash also does not comply with state rest-break or sick-time laws for its couriers, or with any other employee-benefit notice requirements.

32. DoorDash makes it difficult for couriers to understand their true rate of pay.

33. The pay statements DoorDash makes available to couriers do not track the full number of hours worked or mileage driven, both of which a courier would need to determine his or her true net hourly wage in a given week.

**C.    DOORDASH COURIERS ARE EMPLOYEES UNDER FEDERAL AND CALIFORNIA LAW.**

34. Courts determine whether a worker is an employee under the Fair Labor Standards Act by looking to the economic substance of the relationship, not the label adopted by an employer. *See Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

35. In assessing that economic relationship, courts look to a non-exhaustive list of factors that includes:

- the nature and degree of the employer's control over the manner in which the work is to be performed;
- the worker's opportunity for profit or loss depending upon his or her managerial skill;
- the worker's investment in equipment or materials required for his or her task, or his or her employment of workers;
- whether the service rendered requires a special skill;
- whether the worker has an ongoing relationship with the employer; and
- whether the service rendered is an integral part of the employer's business.

36. The ultimate inquiry is whether the worker is genuinely operating an independent business, free from the economic dominance of an employer.

37. Under California law, a worker is classified as an employee unless the hiring business proves that:

- the worker is free from the control and direction of the hiring business;
- the worker performs work that is outside the usual course of the hiring entity's business; <u>and</u>
- the worker is customarily engaged in an independently established trade, occupation, or business and takes the usual steps to establish and promote his or her independent business separate from working for an employer.

*Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 925 (2018), *reh'g denied* (June 20, 2018).

38. Mr. Mckay qualifies as an employee under both federal and California law.

39. DoorDash exercises significant control over Mr. Mckay by determining which deliveries it offers him; how much it will pay him for each delivery; when it will provide him with critical information about each delivery; and how to resolve disputes and complaints regarding each delivery.

40. Because DoorDash sets all the material terms of driving for DoorDash, Mr. Mckay cannot use managerial skill to increase his profits. Mr. Mckay's compensation turns predominately on the number of deliveries he completes and whether he responds to the financial incentives DoorDash sets for him.

41. Mr. Mckay has invested minimal to no capital in his work for DoorDash, and he does not operate a transportation-based business independent of DoorDash.

42. Mr. Mckay has brought no specialized skill to the job.

43. Mr. Mckay has worked for DoorDash on an ongoing basis.

44. Mr. Mckay's work is integral to DoorDash as he, and other couriers, make up the core workforce that provides DoorDash's deliveries.

**D.     BY MISCLASSIFYING MR. MCKAY AS AN INDEPENDENT CONTRACTOR, DOORDASH HAS VIOLATED FEDERAL AND CALIFORNIA LAW.**

45.     Mr. Mckay drives for DoorDash in the Modesto area.

46.     Mr. Mckay's true wages are difficult to calculate accurately, as DoorDash's wage statements do not contain weekly hours or mileage figures.

47.     Nevertheless, it is clear that DoorDash has regularly failed to pay Mr. Mckay the required minimum wage, after accounting for his expenses.

**E.     MR. MCKAY IS NOT SUBJECT TO AN ARBITRATION AGREEMENT.**

48.     To work as a DoorDash courier, Mr. Mckay was required to sign an agreement that contained a provision requiring him to arbitrate any claim arising from his classification as an independent contractor.

49.     DoorDash's agreement provided, however, that Mr. Mckay could opt out of its arbitration provision by sending a signed letter stating his intention to opt out.

50.     The agreement further provided that the opt-out letter must be sent to the following address: "901 Market Street, Suite 600, San Francisco, CA, 94131."

51.     That street address does not exist within the zip code 94131.

52.     Out of an abundance of caution, Mr. Mckay's counsel sent his opt-out letter to both the address listed in the opt-out provision, and the proper address: 901 Market Street, Suite 600, San Francisco, CA, 94103.  Mr. Mckay's opt out letter was postmarked within thirty days of when he signed his agreement, in accordance with the agreement's opt-out requirements.

53.     Mr. Mckay has thus validly opted out of his arbitration agreement with DoorDash, and he may pursue his misclassification claims in court.

## CAUSES OF ACTION

### COUNT I

### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 206

### MINIMUM-WAGE VIOLATIONS

54. DoorDash has at least two employees and has employees who handle and work with goods that have been moved in interstate commerce.

55. DoorDash has annual gross sales or business greater than $500,000.

56. Mr. Mckay is an employee entitled to the protections of the Fair Labor Standards Act.

57. DoorDash has violated the Act by willfully failing to regularly pay Mr. Mckay the minimum wage the Act requires.

58. Mr. Mckay seeks unpaid wages, liquidated damages, interest, and attorneys' fees and costs.

### COUNT II

### CALIFORNIA LABOR CODE, WAGE ORDER NO. 9

### MINIMUM-WAGE VIOLATIONS

59. Mr. Mckay is an employee entitled to the protections of the California Labor Code as interpreted by Wage Order 9 of the Industrial Welfare Commission.

60. DoorDash has violated the California Labor Code by failing to pay Mr. Mckay the minimum wage it requires.

61. Mr. Mckay seeks unpaid wages, interest, and attorneys' fees and costs.

### COUNT III

### CALIFORNIA LABOR CODE § 226(a), (e)

### WAGE STATEMENT VIOLATIONS

62. Mr. Mckay is an employee under California law.

63. DoorDash has failed to provide Mr. Mckay with a wage statement that is compliant with California law.

64. Mr. Mckay, therefore, seeks statutory penalties and attorneys' fees and costs.

## COUNT IV

## UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200

## UNFAIR AND UNLAWFUL BUSINESS PRACTICES

65. By committing the legal violations described above, DoorDash has committed unfair and unlawful business practices in violation of the California Unfair Competition Law.

66. Mr. Mckay, therefore, seeks restitution and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

67. Mr. Mckay seeks an award against DoorDash that incorporates the below relief, but declines to specify an amount in controversy at this time:

   a. A decision that the policies and practices complained of are unlawful under federal and California law;

   b. An award of appropriate equitable relief to remedy DoorDash's violations of federal and California law;

   c. An award of damages, statutory penalties, and restitution to be paid by DoorDash according to proof;

   d. An award of general damages according to proof;

   e. An award of reasonable attorneys' fees and costs incurred in filing this action under 29 U.S.C. §§ 206, 207, California Labor Code §§ 218.5 and 1194, Code of Civil Procedure § 1021.5, and other applicable laws;

   f. An award of pre- and post-judgment interest; and

   g. Such further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

68. NOW COMES Plaintiff Raymond Mckay, by and through his Attorneys, and hereby demands a trial by jury on all issues triable by jury.

| | | |
|---|---|---|
| 1 | Dated: July 26, 2019 | Respectfully submitted, |
| 2 | | /s/ Keith A. Custis |
| | | Keith A. Custis (#218818) |
| 3 | | kcustis@custislawpc.com |
| | | CUSTIS LAW, P.C. |
| 4 | | 1875 Century Park East, Suite 700 |
| | | Los Angeles, California 90067 |
| 5 | | (213) 863-4276 |

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Plaintiff*

10
COMPLAINT
CASE NO. 3:19-cv-04289

**CERTIFICATE OF SERVICE**

I certify that I shall cause the foregoing document to be served by courier on DoorDash, Inc. at its registered agent for service of process, Registered Agent Solutions, Inc., 1220 S. Street, Suite 150, Sacramento, CA 95811, on July 26, 2019.

Dated: July 26, 2019                    /s/ Keith A. Custis