GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ, SBN 242557
 jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

THEANE EVANGELIS, SBN 243570
 tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
 mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

Attorneys for Defendant DOORDASH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAYMOND MCKAY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DOORDASH, INC.,<br><br>　　　　　　Defendant. | CASE NO. 3:19-cv-04289-MMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Action Filed: July 26, 2019<br><br>Hearing Date: October 25, 2019<br>Hearing Time: 9:00 a.m.<br>Hearing Place: Courtroom 7 – 19th Floor<br>Hon. Maxine M. Chesney |

## I. INTRODUCTION

Plaintiff Raymond Mckay asks the Court to create a new loophole that would allow almost anyone to escape every online agreement. Plaintiff admits that he entered into an online contract with DoorDash containing an arbitration agreement, but claims that he is not bound to it because *his wife* began creating the online account and she (not he) accepted the arbitration agreement. Plaintiff's story is full of holes, but ultimately fails because of a single concession: Plaintiff admits that when he completed his account signup, he clicked a button acknowledging that he had "*already started* signing up" for an account. Either that statement was false—and Plaintiff's account is based on a misrepresentation to DoorDash—or it was accurate, and Plaintiff is now barred from asserting he had no idea that his wife started creating an account for him. Either way, Plaintiff cannot use his self-serving declaration to escape the arbitration agreement that he (or his wife, on his behalf) accepted. Because he told DoorDash that he "already started signing up," he must take ownership of the online account that was created with his email address and phone number. Any other rule would undermine the enforceability of all online agreements and allow people to escape their contractual obligations by fabricating stories that someone else used their personal information. *See, e.g., Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 272 (E.D.N.Y. 2019) (rejecting the argument that people can "avoid the terms of a website by simply logging on to a friend's or relative's account instead of creating their own"). The Court should grant DoorDash's motion to compel arbitration and stay this action.

## II.   ARGUMENT

Plaintiff's and his wife's declarations are internally inconsistent and inconsistent with the undisputed manner in which DoorDash's sign-up process works. But even accepting Plaintiff's declarations at face value (and the Court should not), Plaintiff is bound by the Independent Contractor Agreement's ("ICA") arbitration agreement as a matter of law. Further, several equitable doctrines—including equitable estoppel, ostensible authority, and unclean hands—preclude Plaintiff from evading arbitration based on his inequitable conduct. To the extent any dispute about Plaintiff's opt-out remains, the Court should delegate that dispute to an arbitrator, per the parties' agreement.

A. **Plaintiff's New Self-Serving Assertions Are Contradicted by Undisputed Facts**

Plaintiff claims that he signed up for a DoorDash account in June, but did not notice that his email address and phone number already had been used to accept the ICA's arbitration agreement in April. His claim is implausible and legally irrelevant for a variety of reasons.

First, when Plaintiff tried to create a DoorDash account, he was expressly told that an account with "the email address and phone number [he] shared with [his] wife had *already been created,*" and he clicked on a button stating "Already started signing up?" Raymond Mckay Decl. ¶ 7. The screen Plaintiff would have seen at the time he clicked "Sign Up" in June 2019 would have appeared as this:



Declaration of Stanley Tang, ("Tang Decl."), Ex. 1. At that time, any reasonable person who was told that his personal information had been used to form an account would either stop the sign-up process, investigate the circumstances of the account's creation, or both. Plaintiff apparently did neither. He does not allege that he investigated who created an account with his information or when the account

was created. Nor does he allege that he asked DoorDash or his wife about the preexisting account. Instead, he clicked a button titled "Already started signing up?" *Id.* ¶ 8. Under Plaintiff's current version of the facts, this was false, yet he completed his account sign-up anyway.

Second, DoorDash sent additional communications to Plaintiff that put him on notice that his account sign-up started in April. Tang Decl. ¶¶ 7, 9, Exs. 2, 3. Plaintiff received approximately 15 emails from DoorDash between April 17, and May 1, 2019—*before* his purported sign-up date of June 24, 2019—all sent to Plaintiff's email address, rcrmckay@gmail.com, asking him complete his background check. *Id.* ¶ 7, Ex. 2. And Plaintiff opened at least one of these 15 emails. *Id.* ¶ 8. Yet, he implausibly claims that he had no idea an account with his email address and phone number had been created in April.

Third, Plaintiff claims that he did not learn until *August* that his wife started creating their account in April. *See* Christina Mckay Decl. ¶ 11. But Plaintiff apparently hired a lawyer in either June or July to sue DoorDash over his account. (Opp. at 5 (Plaintiff's "counsel" mailed his opt-out to DoorDash on July 11).) It is implausible that Plaintiff would have hired a lawyer to sue DoorDash over his account but not investigate the circumstances of his account creation or discuss the account with his wife until more than one month later.

The Court should not accept Plaintiff's and his wife's declarations because they are inconsistent with the allegations in the Complaint, inconsistent with the undisputed manner in which the DoorDash sign-up process worked, and in any event legally irrelevant. *Sundquist v. Ubiquity, Inc.*, 2017 WL 3721475, at *4 (S.D. Cal. Jan. 17, 2017) (granting motion to compel as plaintiff's declaration amounted to "nothing more than a self-serving, conclusory declaration that cannot raise a material question of fact"); *see F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). If the Court is inclined to credit Plaintiff's statements as true, DoorDash requests the opportunity to depose Plaintiff and his wife and, if necessary, submit supplemental briefing.

**B.     Plaintiff Cannot Avoid Arbitration As A Matter Of Law**

Even accepting Plaintiff's declaration at face value, he is bound to the ICA's arbitration agreement as a matter of law.

Plaintiff concedes that his DoorDash account was created in April 2019 (Opp. at 1), and that the account creator manifested assent to the ICA as a condition of creating the account (Tang Decl. ¶¶ 6–10; Christina Mckay Decl. ¶ 7; *see also* Raymond Mckay Decl. ¶ 9). Plaintiff also concedes that he "agreed to be bound by the ICA." Opp. at 3. But he asserts that *his* agreement occurred in June and should control rather than *his wife's* agreement in April, and therefore his attempt to opt out of arbitration in July is effective. *Id.*

The ICA itself forecloses Plaintiff's theory. The first paragraph of the ICA states that it "become[s] effective on the date it is accepted regardless of whether you are eligible to, or ever do, perform any Contracted Services." Tang Decl. Ex. A, p. 1. Plaintiff's personal information was used to create a DoorDash account on April 1, 2019, making the ICA effective *on that date*. (Christina Mckay Decl. ¶¶ 6–7.) Thus, Plaintiff had 30 days from April 1, 2019, to opt out of the arbitration agreement, and it is undisputed that he did not do so. The Court should enforce the opt-out deadline as written and reject Plaintiff's untimely opt out. *See Posephny v. AMN Healthcare Inc.*, 2019 WL 452036, at *7 (N.D. Cal. Feb. 5, 2019) (compelling arbitration when plaintiffs' attempted opt-out was untimely).

Courts that have "considered facts analogous to this case … have held that a third-party user of an account is bound by the terms governing the account." *Nicosia*, 384 F. Supp. 3d at 272; *see also Motise v. America Online, Inc.*, 346 F.Supp.2d 563, 565–66 (S.D.N.Y. 2004) (plaintiff using his stepfather's AOL account bound by forum-selection provision in account's member agreement); *Roberts v. EBay Inc.*, 2017 WL 9289378, at *8 n.6 (D.S.C. July 29, 2017) ("Whether the Plaintiff was the account holder or not, he was bound by the PayPal user agreement."); *Burcham v. Expedia, Inc.*, 2009 WL 586513, at *2 (E.D. Mo. Mar. 6, 2009) ("Even assuming somehow that [plaintiff] never knew he created a user account or that an account was created for him, [plaintiff] is still bound by the user agreement.").

In *Nicosia*, the court found that plaintiff's use of his wife's Amazon account "was tantamount to a representation" that he "*was*" his wife, "and therefore bound by the arbitration provision to which she had previously agreed." 384 F. Supp. 3d at 272 (original emphasis). As the court held, "the entire purpose of an [online] 'account' ... is to assume virtual personhood—to enter into contracts and,

crucially, to remain bound by the contracts to which it has previously, and with due authority, agreed." *Id*. As a policy matter, "[i]f the validity of these contract terms waxed and waned depending on the identity of the human user behind the screen, it would impose a cloud of uncertainty over any contract formed over the internet." *Id.* Thus, Plaintiff's proposed versions of the events is irrelevant—he is bound by the terms of the ICA and by its arbitration agreement. *See Krafczek v. Cablevision Sys. Corp.*, 2018 WL 8918077, at *4 (E.D.N.Y. Apr. 25, 2018) (granting motion to compel arbitration when terms of the agreement, including arbitration clause, were displayed and either plaintiff or his wife clicked 'I agree.'").

Plaintiff's cases are inapposite. In *Ruiz v. Moss Brothers Auto Group, Inc.*, 232 Cal. App. 4th 836, 844 (2014) (cited at Opp. at 6), the court denied a petition to compel arbitration when the plaintiff "did not recall" signing the electronic arbitration agreement. Further, the defendant in *Ruiz* failed to provide evidence that its employees "were required to use their unique login ID and password …. [to] sign[] electronic forms and agreements." *Id.* at 843. Here, by contrast, Plaintiff concedes that "the email address and phone number now associated with Mr. Mckay's account were first submitted in April 2019" (Opp. at 6), and that in June 2019 he told DoorDash that he "[a]lready started signing up" for an account (Raymond Mckay Decl. ¶ 8).

*Smith v. Rent-A-Center, Inc.*, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019) (cited at Opp. at 6), is inapposite because the plaintiff argued that the electronic agreement was pre-populated with his e-signature, and that he was never required to "acknowledge any agreement itself." *Smith* thus dealt with the burden to authenticate a disputed signature, but no such dispute exists here—Plaintiff concedes that by clicking "Sign Up" and "[a]lready started signing up," he acknowledged agreement to the ICA. Raymond Mckay Decl. ¶ 8; Opp. at 5. Because Plaintiff "provided valid consent to the [ICA], it is of no moment" whether he read it. *Smith*, 2019 WL 1294443, at *3. Further, *Smith* is currently on appeal, and the district court's order acknowledges that the court was "unable to devote inordinate time and resources" to the case in light of "the shortage of district judges and staff." *Id.* at *1.[1]

---

[1] *Prasad v. Pinnacle Management Services Co.*, 2018 WL 401231 (N.D. Cal. Jan. 12, 2018), is irrelevant for the same reason. *Prasad* concerned the authentication of a disputed signature. No signature is in dispute here.

In sum, Plaintiff is bound by the ICA's effective date of April 1, 2019 as a matter of law, and his attempt to opt out was untimely.

## C. Plaintiff Should Not Be Permitted To Avoid Arbitration As A Matter Of Equity

Equity also precludes Plaintiff from using misrepresentations and/or willful ignorance to escape the arbitration agreement. Here, the arbitration agreement delegates these questions to the arbitrator. Tang Decl. Ex. A, ICA § XI.3 ("All other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court."); *see Hill v. Anheuser-Busch InBev Worldwide, Inc.*, 2014 WL 10100283, at *2 (C.D. Cal. Nov. 26, 2014) ("When parties have not contracted otherwise, issues of substantive arbitrability—validity and applicability—are decided by courts, and issues of procedural arbitrability—time limits, notice, laches, estoppel, etc.—are decided by arbitrators."). To the extent the Court disagrees, Plaintiff is nevertheless bound to agreement via the equitable principles of estoppel and unclean hands.

### 1. Plaintiff Is Equitably Estopped From Avoiding Arbitration

Equitable estoppel "results from a representation of fact which the party making such representation is not legally permitted to deny." *Baillargeon v. Dep't of Water & Power*, 69 Cal. App. 3d 670, 678 (1977). To establish equitable estoppel, "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 756 (2014) (citations omitted).

All four elements are met here. *First*, Plaintiff knew that his email account and phone number already had been used to create a Dasher account, and he knew that he was not the one who had "already started signing up." *See* Raymond Mckay Decl. ¶¶ 7–8. *Second*, Plaintiff intended DoorDash to rely on his conduct by clicking the button titled "Already started signing up?" despite never having signed up himself. *Third*, DoorDash did not know that Plaintiff had not already started signing up, or that he intended to share an account with his wife. *Fourth*, DoorDash relied on this to its detriment by permitting Plaintiff to use the DoorDash platform to perform Contracted Services under the reasonable

belief that Plaintiff agreed to the ICA when his account was created in April 2019.  Thus, plaintiff is bound by the arbitration agreement under the doctrine of equitable estoppel.  *Nicosia*, 384 F. Supp. 3d at 275 (plaintiff bound by arbitration agreement by use of his wife's online account under theory of equitable estoppel).

### 2. Plaintiff Is Estopped Under The Doctrine Of Ostensible Authority

Plaintiff also is bound by the ICA's arbitration agreement under the related doctrine of ostensible authority.  *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." (internal citations omitted).)   State law, as opposed to federal substantive law of arbitrability, provides the relevant contract principles. *See Arthur Andersen v. Carlisle*, 556 U.S. 624, 630 (2009) (the FAA does not "purport[ ] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)").  In California, ostensible authority exists when a principal "intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Cal. Civ. Code § 2317.  Where ostensible authority exists, "a principal is bound by acts of his agent ... to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof."  Cal. Civ. Code § 2334.  In other words, "if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third persons who have relied and acted thereon in good faith, that he did not intend to confer such power." *Yanchor v. Kagan*, 22 Cal. App. 3d 544, 549 (1971).

Ostensible authority, therefore, "rests upon the doctrine of estoppel," and has three elements: (1) "representation by the principal," (2) "justifiable reliance thereon by a third person," and (3) "change of position or injury resulting from such reliance."  *Id.* (citing *Freitas v. Marsh*, 70 Cal. App. 2d 711, 713 (1945)).

Here—even accepting Plaintiff's version of events as true—Plaintiff's wife acted with ostensible authority to bind him to the ICA.  *First*, Plaintiff, either "intentionally or by want of ordinary care" caused DoorDash to believe his wife possessed the authority to enter into the ICA through her use of their shared email address and phone number.  DoorDash explained to Plaintiff that an account

with his information already had been created, yet he told DoorDash that he had "[a]ready started signing up." Raymond Mckay Decl. ¶¶ 7–8. Rather than make that misstatement to DoorDash, Plaintiff should have discontinued the sign-up process or contacted DoorDash to investigate who used his personal information to create an account. He did not do so. *Second*, DoorDash justifiably relied upon these representations, because a person authorized to use the email account agreed to the terms of the ICA, and the ICA specifically contemplates that a "contractor" who agrees to the ICA may consist of more than one person. *Third*, DoorDash would suffer a "change of position ... resulting from such reliance" as Plaintiff now seeks to avoid the ICA's arbitration agreement. Because Plaintiff's wife acted with Plaintiff's ostensible authority to bind Plaintiff to the ICA in April 2019, Plaintiff is estopped from arguing otherwise.

### 3. Plaintiff Has Unclean Hands

Plaintiff should not be permitted to avoid the ICA's arbitration agreement under the equitable doctrine of unclean hands. "The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy." *Gen. Elec. Co. v. Superior Court*, 45 Cal. 2d 897, 899–900 (1955); *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th 436, 446 (2000). "Unclean hands provides a defense when granting plaintiff any relief would be inequitable." *Dickson, Carlson & Campillo*, 83 Cal. App. 4th at 447. The doctrine "requires inequitable conduct by the plaintiff in connection with the matter in controversy and provides a complete defense to the plaintiff's action." *Id.*

Here, by continuing with the sign-up process despite having actual notice that the sign-up process had already been initiated with his account information, and then submitting an opt-out provision without investigating whether his opt-out was timely under the agreement, Plaintiff acted inequitably.

At the very least, Plaintiff made a negligent misrepresentation. Negligent misrepresentation has five elements: (1) a misrepresentation, (2) the absence of reasonable grounds for believing the misrepresentation to be true, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016). All five elements are met here. *First*, Plaintiff misrepresented

the fact that he had already started signing up for a DoorDash account. *See* Raymond Mckay Decl. ¶ 8. *Second*, Plaintiff had no reasonable grounds for believing the misrepresentation to be true—he claims he only "later learned" that his wife had begun the sign-up process, and apparently never inquired how his personal information had been used to create a DoorDash account. *Id.* ¶ 9. *Third*, by mailing his opt-out letter in July 2019, Plaintiff intended to induce DoorDash to rely on the misrepresentation that the account was actually created in June 2019 when Plaintiff knew that was not true. *Fourth*, DoorDash actually and justifiably relied on Plaintiff's statement that he had "[a]lready started signing up" by allowing Plaintiff to "complete[] the signup process." *Id.* ¶ 10. *Fifth*, DoorDash has suffered damage by defending this lawsuit that should never have been filed in court.

Plaintiff has unclean hands. He should be barred from avoiding the ICA's arbitration agreement.

**D.      The Parties Delegated To An Arbitrator Any Dispute Over Plaintiff's Opt-Out.**

If the Court determines that a dispute over Plaintiff's opt-out remains, it should delegate that dispute to an arbitrator, per the parties' agreement. *See* Tang Decl. Ex. A, § XI.3 ("an arbitrator, and not … any court" shall determine all disputes with respect to Mutual Arbitration Provision's enforceability, applicability, and validity); *Erwin v. Citibank, N.A.*, 2017 WL 1047575, at *4–5 (S.D. Cal. Mar. 20, 2017) (disputes over validity of opt-outs go to arbitrator where—as here—parties delegated issues of arbitrability to the arbitrator).

Plaintiff concedes that he agreed to the ICA, and he does not dispute the enforceability of the ICA's delegation clause. (Opp. at 5.) Rather, he argues that the delegation clause does not apply in this factual scenario because he opted out of the arbitration agreement. But Plaintiff's circular argument is contrary to law—Plaintiff wants to foreclose arbitration over a dispute regarding the validity of his opt-out by claiming he validly opted out. This is the precise type of dispute the parties agreed to arbitrate. Plaintiff urges the Court not to enforce the ICA's delegation clause based on *Erwin*, but he misses the key point: The contract in *Erwin* did not have a delegation clause. 2017 WL 1047575, at *5. Thus, the *Erwin* court had to decide arbitrability for itself. Not so here.

Plaintiff's remaining cases fail. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991), did not include a delegation clause and thus is inapposite to situations where (as

here) the parties delegated questions of arbitrability to an arbitrator. Likewise, there is no discussion of a delegation clause in *Tanis v. Southwest Airlines, Co.*, 2019 WL 1111240 (S.D. Cal. Mar. 11, 2019) or *Flores v. Jewels Marketing & Agribusiness*, 2007 WL 2022042 (E.D. Cal. July 9, 2007). Despite the lack of delegation clause, *Flores* supports DoorDash by making clear that although "disputes whether a contract ever existed are issues for the court, … disputes whether a contract has expired, has been terminated, or has been repudiated are issues for the arbitrator, and not the courts, if the arbitration clause is sufficiently broad." *Id.* at *5. Here, there is no dispute the contract exists; the parties dispute only whether their agreement to arbitrate was terminated by Plaintiff's attempted opt-out. Such disputes go to the arbitrator under the parties' delegation clause.

*Kum Tat Limited v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (cited at Opp 9), also supports DoorDash. The Ninth Circuit stated that "challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator," while "challenges to the very existence of the contract are, in general, properly directed to the court." Here, Plaintiff does not challenge the existence of the contract—he concedes that he entered into the ICA, and that the ICA contained an arbitration agreement. Opp. at 5. The dispute about whether his *subsequent* attempt to opt out of one portion of the ICA (the arbitration agreement) is distinct from arguing "there was 'no contract'" at all. *Kum Tat*, 845 F.3d at 983. For the same reason, Plaintiff's reliance on discussions about contract formation in *Edwards v. DoorDash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018), and *In re Uber Text Messaging*, 2019 WL 2509337, at *6 (N.D. Cal. June 18, 2019), do not help him.

### III. CONCLUSION

Plaintiff's purported attempt to opt out of the ICA's arbitration agreement is invalid on legal and equitable grounds. This Court should compel arbitration on an individual basis and stay this action.

Dated: September 3, 2019    GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Joshua Lipshutz*
           Joshua Lipshutz

Attorneys for Defendant DOORDASH, INC.

**PROOF OF SERVICE**

I, Tim Kolesk, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071, in said County and State. On September 3, 2019, I served the following document(s):

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

On the parties stated below, by the following means of service:

Keith A. Custis
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, CA 90067
213.863.4276
kcustis@custislawpc.com

Ashley Keller
Travis Lenkner
Marquel Reddish
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
312.741.5220
ack@kellerlenkner.com
tdl@kellerlenkner.com
mpr@kellerlenkner.com

Warren Postman
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
202.749.8334
wdp@kellerlenkner.com

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

1 ☑ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2019

                                             */s/ Tim Kolesk*
                                               Tim Kolesk